1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROD WILLIAM IRELAND,                    No.  2:19-cv-1104-KJM-EFB P

12              Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS

14   SOLANO COUNTY, et al.,

15              Defendants.

16

17        Plaintiff filed a section 1983 suit alleging that defendants – C. White and Solano County -

18   violated his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act,

19   California Government Code § 11135, and under the Fourteenth Amendment's (1) Equal

20   Protection Clause; (2) violation on pre-trial punishment; and (3) guarantee of procedural due

21   process.  ECF No. 13-1.  Now, defendants have filed a motion to dismiss.  ECF No. 21.  Plaintiff

22   has filed an opposition (ECF No. 22) and defendants have filed a reply (ECF No. 25).  For the

23   reasons stated hereafter, defendants' motion should be granted in part.

24                              Background

25        Plaintiff alleges that, while incarcerated as a pre-trial detainee at the Solano County Jail,

26   defendants violated his rights by placing him in administrative segregation and declining to afford

27   him all of the benefits which attended those prisoners housed in the general population.  ECF No.

28   13-1 at 14-15.  Plaintiff alleges that, as a detainee whose mental health issues preclude being

                                        1

1   housed with others, defendants should have safeguarded his rights by placing him in a single cell

2   and, in all other respects, maintaining the rights and privileges that attend general population

3   detainees. *Id.* at 14.

4       Plaintiff also claims that defendant White violated his rights by invoking a false

5   justification for placing him in administrative segregation.  Specifically, he alleges that White

6   falsely asserted that plaintiff had communicated thoughts of harming other inmates if he was

7   housed with them. *Id.* at 24.  After a grievance was filed, White allegedly conceded that he was

8   mistaken in that assessment, but maintained that administrative segregation was appropriate for

9   inmates who could not dual house with others and that plaintiff's segregated status would be

10   reviewed weekly. *Id.* at 27.

11   Legal Standards

12       A complaint may be dismissed under that rule for "failure to state a claim upon which

13   relief may be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to

14   state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its

15   face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility

16   when the plaintiff pleads factual content that allows the court to draw the reasonable inference

17   that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

18   (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability

19   requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully.

20   *Iqbal*, 556 U.S. at 678.

21       For purposes of dismissal under Rule 12(b)(6), the court generally considers only

22   allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

23   subject to judicial notice, and construes all well-pleaded material factual allegations in the light

24   most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710

25   F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

26   /////

27   /////

28   /////

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co*., 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

Analysis

I.      ADA Claims

Defendants argue that, as an initial matter, no ADA or Rehabilitation claim may be pursued against White in his individual capacity. They are correct. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("We therefore join the Fifth, Eighth, and Eleventh Circuits and hold that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). This point appears to be moot, however, insofar as plaintiff's opposition specifies that his claims under the foregoing provisions are brought solely against Solano itself and White in his official capacity. ECF No. 22 at 3. Nevertheless, the ADA claim against White should be dismissed as redundant. *See Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.").

Next, defendants contend that, more broadly, plaintiff has failed to adequately plead a claim under the ADA. To plead a claim under the ADA a plaintiff must allege that he: (1) is an individual with a disability; (2) is otherwise qualified to participate in or receive the benefit of some of the public entity's services, programs, or activities; (3) was either excluded from participation or denied the benefits of the public entity's services, programs, or activities, or was

3

otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the alleged disability.  *See O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007).  Defendants argue that plaintiff has failed to plead that he is an individual with a disability or that his placement in administrative segregation was because of his disability.

With respect to plaintiff's status as an individual with a disability, his third amended complaint repeatedly mentions "mental health disabilities."  *See, e.g.*, ECF No. 13-1 at 17.  The grievances attached to the complaint make clear that the mental issue plaintiff references is bipolar mood disorder.  *Id.* at 6.  Defendants acknowledge that fact and that bipolar disorder can be a disability under the ADA - but only if it is "sufficiently severe."  *See Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1081 (10th Cir. 1997).  They contend that plaintiff has failed to allege the requisite level of severity insofar as he does not allege what major life activities his disorder limits; rather, he alleges only that he suffers from mood changes.  The documents attached to the complaint, however, make clear that plaintiff suffers from racing thoughts and hearing issues which cause him to hear non-existent voices.  ECF No. 13-1 at 6 & No. 22 at 4.  In his grievance, plaintiff maintains that disorder makes it difficult for him to cohabitate with others insofar as it causes him") to believe that others are talking about him.  ECF No. 13-1 at 6.  This, in turn, causes his moods to "sharply" fluctuate and others to misunderstand his intent.  *Id.*  The question of whether a plaintiff's disability is "sufficiently severe" is a fact-intensive one and not suited for resolution on a motion to dismiss.  *See, e.g., Bordonaro v. Johnston County Bd. of Educ.*, 938 F. Supp. 2d 573, 579 (E.D.N.C. Apr. 11, 2013) ("As the Court is considering only a motion to dismiss, it does not have a record before it from which to determine whether plaintiff's glaucoma and peripheral vision loss in fact constitute a substantial limitation on the major life activity of seeing . . . .");  *Lewis v. Turning Point Brooklyn, Inc.*, 2019 WL 1433068, 2019 U.S. Dist. LEXIS 54398, *9 (E.D.N.Y. Mar. 29, 2019) ("While it is highly doubtful, given the very short duration of her absences from work, that Ms. Lewis had a disability within the meaning of the ADA, the Court declines to decide prematurely such a fact-specific inquiry at the motion to dismiss phase.").  The allegations at bar, viewed in the light most favorable to plaintiff, sufficiently allege

1    that he suffers from a disability under the ADA.  Whether his mental illness is sufficiently severe

2    to qualify under the ADA is a fact-intensive question more appropriately reserved for summary

3    judgment.

4           Turning to the question of whether the plaintiff was placed in administrative segregation

5    because of his disability, the court concludes that plaintiff has sufficiently alleged that, after June

6    18, 2019, he was placed in administrative segregation because of his disability.  In his opposition,

7    plaintiff concedes that he was initially placed in administrative segregation on June 4, 2019

8    because defendant White (and, perhaps, other unnamed correctional officials) believed plaintiff

9    posed a threat to himself, other inmates, and the security of the jail.  ECF No. 22 at 7.  Plaintiff

10   states that the complaint "focuses" on White's actions starting on June 18, 2019, when the latter

11   acknowledged that plaintiff did not pose such a threat but nevertheless kept him in administrative

12   segregation due to his mental health issues.  ECF No. 13-1 at 12; ECF No. 22 at 7.  The court

13   agrees that, from June 18, 2019 onward, plaintiff has sufficiently alleged that he was placed in

14   administrative segregation because of his mental health issues.  Indeed, the grievance attached to

15   his complaint appears to explicitly state that this was White's justification for keeping plaintiff in

16   administrative segregation.  *See* ECF No. 13-1 at 12 ("It appears that there was a

17   miscommunication [regarding plaintiff wanting to kill or harm others if housed in general

18   population] . . . . However, inmate Ireland does have mental health issues, and he is not suitable

19   for dual housing.  Inmate to remain ADSEP . . . .").

20          II.    Rehabilitation Act Claims

21          As noted in the previous section, defendants are correct that plaintiff may not pursue a

22   Rehabilitation Act against White in his individual capacity.  And, like the ADA claim against

23   White, the Rehabilitation Act claim is redundant insofar as it is also brought against Solano

24   County.  *See Center for Bio-Ethical Reform, Inc.*, 533 F.3d at 799.

25          Defendants also restate their argument from the foregoing section that plaintiff has not

26   sufficiently alleged that he suffers from a disability within the meaning of either the ADA or the

27   /////

28   /////

5

1  Rehabilitation Act[1] or that he was placed in administrative segregation because of any disability.

2  Those arguments are rejected for the same reasons articulated *supra*.

3        III.     Claims Under California Government Code § 11135

4        Defendants argue that claims under California Government Code § 11135 may seek only

5  equitable relief, not money damages as plaintiff requests here.  In his opposition, plaintiff

6  concedes this point, but requests that this claim be dismissed with leave to amend so that he may

7  attempt to correct this deficiency in pleading.  ECF No. 22 at 23.  Accordingly, this claim should

8  be dismissed.

9        IV.     Section 1983 Claims Pursuant to the Fourteenth Amendment

10        As noted *supra*, plaintiff raises three separate Fourteenth Amendment claims related to his

11  placement in administrative segregation.  They are that his placement violated: (1) the Equal

12  Protection Clause; (2) the violation on pre-trial punishment; and (3) his guarantee of procedural

13  due process.  Defendants allege that each of these claims fails to allege sufficient facts to be

14  cognizable and all should be dismissed.

15        a.     Equal Protection Claim

16        A successful class of one equal protection claim – as plaintiff attempts to plead here –

17  requires the allegation of three elements: (1) intentional behavior on the part of the defendant, (2)

18  treatment different from others similarly situated, and (3) a lack of rational basis for the differing

19  treatment.  *Gerhart v. Lake County, Mont*., 637 F.3d 1013, 1022 (9th Cir. 2011).  Defendants

20  argue that plaintiff has failed to adequately plead the second and third elements.  They contend

21  that he has not shown that he was treated differently from others that were similarly situated –

22  though they do not expound on this point.  They also argue that a rational basis – namely

23  plaintiff's own admitted lack of suitability for being housed with other inmates – underlay the

24  decision to place him in administrative segregation.

25        For his part, plaintiff disputes that his mental illness necessitated placement in

26  administrative segregation.  He states that prison authorities might have safeguarded his needs by

27

28        [1] Defendants acknowledge that the Rehabilitation Act incorporates the ADA standards with regard to construction of disabilities.  ECF No. 21-1 at 13.

placing him in single cell housing and otherwise allowing him to remain in the general

population.  His point is well taken at this stage.  Defendants have not shown that the only

available choice to prison officials was between dual housing and administrative segregation.

Indeed, one of the documents attached to plaintiff's complaint appears to indicate that single cell

status was available.  *See* ECF No. 13-1 at 6 (official response to plaintiff's ADA accommodation

request noting that "[o]n 6/5/19 the mental health care provider recommended single-cell housing

. . .").  It may be that other logistical or penological concerns necessitated plaintiff's placement in

administrative segregation, but such evidence (if it exists) lies outside the corners of the instant

complaint and is more appropriately presented on summary judgment.

As to whether he was treated differently from similarly situated inmates, plaintiff asserts

that he was, but offers no description of the similarly situated individuals he is comparing himself

to.  As such, this claim is inadequately plead.  It is unclear to the reader whether other prisoners –

either with or without mental illnesses – were routinely granted their single cell status requests.

Courts in this district, in evaluating "similarly situated individuals" have held that "the level of

similarity between plaintiff and the persons with whom they compare themselves must be

extremely high."  *Morris v. State Bar of Cal*., 2010 WL 2353528, 2010 U.S. Dist. LEXIS 57074,

\*21 (E.D. Cal. Jun. 9, 2010) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2nd Cir. 2005)).

Plaintiff's allegations do not plead this level of similarity and, accordingly, this claim will be

dismissed with leave to amend.

### b.     Pre-Trial Punishment

Defendants acknowledge that the Fourteenth Amendment's Due Process Clause forbids

punishment of a detainee prior to an adjudication of guilt.  *See Bell v. Wolfish*, 441 U.S. 520, 535

(1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication

of guilt in accordance with due process of law.").  They argue, however, that it is unclear what

harm, if any, plaintiff suffered from being housed in administrative segregation given his

preference for solo housing.  ECF No. 21-1 at 16.  Further, they contend that the purpose of

plaintiff's placement was not punitive; defendant White was merely following the guidance of the

facility medical staff.  *Id.*

The court, having reviewed the complaint and taking plaintiff's allegations as true, disagrees with defendants' assessment.  Plaintiff clearly alleges that his assignment to administrative segregation resulted in greater isolation than would have attended regular single cell status.  *See* ECF No. 13-1 at 15 (alleging that plaintiff suffered "prolonged and excessively undue isolation" and comparing his conditions to solitary confinement).  He further claims that, in light of his mental conditions, this prolonged isolation was especially harmful to him.  *Id.* at 17.  The U.S. Court of Appeals for the Ninth Circuit has held that, although placement in administrative segregation does not typically give rise to a protected liberty interest, the combination of a plaintiff's disability and placement in segregation may constitute an atypical and significant hardship and, thus, give rise to such an interest.  *See Serrano v. Francis*, 345 F.3d 1071, 1078-79 (9th Cir. 2003).  Moreover, plaintiff plainly alleges that, once the White learned that plaintiff had not indicated an intent to harm himself or others, further assignment to administrative segregation was unwarranted.  ECF No. 13-1 at 6 (alleging that plaintiff's health care provider recognized "the need to allow plaintiff to house by himself in a cell, but allow him to remain in general population."); at 18 (alleging that defendant White arbitrarily chose to keep plaintiff in administrative segregation even after it was deemed medically unnecessary).  At this stage, the court accepts these allegations as true and, thus, declines to recommend dismissal of this claim.

c.     Procedural Due Process

A procedural due process claim under the Fourteenth Amendment requires a claimant to plead: (1) the existence of a protectible liberty or property interest; and (2) denial of adequate procedural protections.  *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) ("A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of adequate procedural protections.") (citation and quotation marks omitted).  As noted *supra*, an inmate's placement in administrative segregation, when combined with his disabilities, may combine to create a protectible liberty interest.  Taking plaintiff's allegations as true, that element is satisfied here.  Thus, the question is whether plaintiff has adequately plead denial of procedural protections.  Defendants argue that plaintiff's ability to

8

1    avail himself of the prison grievance system afforded him adequate procedural protection.  Due

2    process, at a minimum, requires notice and an opportunity to be heard.  *Procunier v. Martinez*,

3    416 U.S. 396 (1974).  The court has reviewed plaintiff's opposition and, nothing therein,

4    addresses the question of whether the grievance process was an adequate procedural protection.

5    Plaintiff merely claims that, once White determined that plaintiff was not a threat to himself or

6    others, procedural due process required his release from administrative segregation.  ECF No. 22

7    at 36.  Thus, the court accepts defendants' argument that plaintiff's liberty interests were

8    adequately protected by his ability to utilize the grievance system.[2]  *See*, *e.g.*, *Warner v. Tileston*,

9    2018 WL 3368961, 2018 U.S. Dist. LEXIS 114734, *60 (N.D. Cal. Jul. 10, 2018) ("Even if

10   Plaintiff's due process rights were implicated, the evidence demonstrates that he was given notice

11   and an opportunity to be heard as shown by the fact that he filed a grievance challenging the

12   failure to transfer him to RJD.").

13           V.      Qualified Immunity

14           Defendants argue that, with respect to the alleged Fourteenth Amendment violations,

15   defendant White is shielded by qualified immunity.  As noted *supra*, this court finds that only

16   plaintiff's pre-trial punishment claim should survive the motion to dismiss.  Thus, it will address

17   the qualified immunity question only with respect to that claim.

18           Qualified immunity protects government officials from liability for civil damages where a

19   reasonable official would not have known that his conduct violated a clearly established right.

20   *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  In resolving questions of qualified

21   immunity, "courts engage in a two-pronged inquiry."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865

22   (2014) (per curiam). "The first asks whether the facts, taken in the light most favorable to the

23   /////

24   /////

_____

25           [2] In his complaint, plaintiff alleges that the grievance system does not give rise to any
26   genuine investigation of the issues a detainee complains of.  ECF No. 13-1 at 26.  But this
     allegation is conclusory and unsupported by any factual allegations – other than plaintiff's
27   assertion that no one interviewed him in connection with his claims.  *Id.*  Regardless, an alleged
     lack of investigatory resources does not show that plaintiff was denied notice and an opportunity
28   to be heard.

1   party asserting the injury, . . . show the officer's conduct violated a federal right." *Id.* (citation

2   and bracketing omitted). "The second prong . . . asks whether the right in question was clearly

3   established at the time of the violation." *Id.* at 1866 (citation omitted).

4         A right is "clearly established" when "the contours of the right [are] sufficiently clear that

5   a reasonable official would understand that what he is doing violates that right." *Anderson*, 483

6   U.S. at 640.  Clearly established law should not be defined "at a high level of generality"; rather,

7   it "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017)

8   (per curiam) (citation omitted).  While this standard does not require "a case directly on point,"

9   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), courts typically should identify analogous cases,

10  i.e., ones in which prison officials "acting under similar circumstances" violated the Eighth

11  Amendment, *White*, 137 S. Ct. at 552.  To be analogous, however, the case need not be

12  "materially similar."

13        In the Ninth Circuit, to assess whether a right is clearly established, courts first look to

14  "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc.*

15  *v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted).  Absent binding precedent,

16  courts should consider all relevant decisional law.  *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th

17  Cir. 1985).  Unpublished circuit and district court decisions inform the analysis.  *Bahrampour v.*

18  *Lampert*, 356 F.3d 969, 977 (9th Cir. 2004); *Krug v. Lutz*, 329 F.3d 692, 699 (9th Cir. 2003).

19        Here, with respect to the pre-trial punishment claim, the court finds that White is not

20  entitled to qualified immunity.  The prohibition on pre-trial punishment of a detainee has been

21  long established.  *See Bell*, 441 U.S. at 535.  So too, the Ninth Circuit's finding that placement in

22  administrative segregation, when combined with an inmate's disabilities (which, here, plaintiff

23  has alleged were made worse by segregation), may give rise to an atypical hardship within the

24  context of prison life.  *See Serrano*, 345 F.3d at 1078-79.  And, while defendants characterize

25  White's decision to keep plaintiff in segregation as consistent with plaintiff's statements to

26  medical providers, that justification would appear to evaporate once it was acknowledged that

27  plaintiff had not actually articulated any propensity to harm himself or others.  ECF No. 13-1 at

28  18.  Indeed, plaintiff characterizes White's decision to keep him in administrative segregation as,

1    at that point, lacking in compelling justification and based on an intent to discriminate against

2    him because of his mental health issues.  *Id.* at 27-28.  Thus, the court declines to recommend

3    dismissal based on qualified immunity at this juncture.  *See Groten v. California*, 251 F.3d 844,

4    851 (9th Cir. 2001) (a Rule 12(b)(6) dismissal based on qualified immunity "is not appropriate

5    unless we can determine, based on the complaint itself, that qualified immunity applies.").

6    VI.    <u>Claims Against Solano County</u>

7    Lastly, defendants argue that plaintiff has failed to state any cognizable claim against

8    Solano County itself.  First, they argue that, insofar as plaintiff has failed to state any cognizable

9    claim for a constitutional violation, all 1983 claims against Solano County should be dismissed.

10   As noted *supra*, however, the court has found one of plaintiff's Fourteenth Amendment claims –

11   implicating pre-trial punishment – is cognizable.

12   Second, defendants argue that plaintiff has failed to sufficiently identify any policy,

13   custom, or practice of the county responsible for the alleged violation of his constitutional rights.

14   To establish liability on the part of the county, plaintiff must allege that  "(1) that he possessed a

15   constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

16   policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the

17   policy is the "moving force behind the constitutional violation."  *Oviatt v. Pearce*, 954 F.2d 1470,

18   1474 (9th Cir. 1992).  Defendants state that plaintiff's claim that county policy motivated his

19   assignment to administrative segregation are vague and unsupported by specific factual

20   allegations.  The court agrees.  Throughout his complaint, plaintiff routinely argues that it is a

21   policy of the county to confine individuals with mental issues to administrative segregation.  *See*,

22   *e.g.*, ECF No. 13-1 at 23-24.  But he does not satisfactorily allege how he came to understand

23   either his placement in administrative segregation or the denial of a single cell within the general

24   populace as a policy, rather than, as defendants reasonably point out, a random or isolated

25   /////

26   /////

27   /////

28   /////

11

1  incident perpetrated by defendant White – a non-policymaking employee.[3]  *See Spears v. City*

2  *and Cty of San Francisco*, 2008 WL 2812022, 2008 U.S. Dist. LEXIS 65993, * 18 (N.D. Cal. Jul.

3  21, 2008) ("Random acts or isolated incidents of unconstitutional action by a non-policymaking

4  employee are insufficient to establish the existence of a municipal policy or custom.").

5  <u>Conclusion</u>

6       The court notes, in closing, that defendants have requested that those claims that are

7  dismissed be dismissed with prejudice.  ECF No. 21-1 at 21.  The Ninth Circuit has held,

8  however, that dismissal with prejudice is appropriate only where dismissal could not be saved by

9  amendment.  *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051-52 (9th Cir.

10  2003).  Accordingly, the claims recommended for dismissal will be without prejudice.

11       For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

12       1.   Defendant's motion to dismiss (ECF No. 21) be GRANTED in part.

13       2.   The following claims be dismissed without prejudice:

14            a.   Plaintiff's ADA and Rehabilitation Act claims -both individual and official

15                 capacity- against Defendant White;

16            b.   Plaintiff's claims pursuant to California Government Code § 11135;

17            c.   Plaintiff's Fourteenth Amendment Equal Protection and Due Process claims

18                 against both defendants; and

19            d.   Plaintiff's constitutional claims against Solano County.

20  _____

21       [3] The court notes that defendants have moved for dismissal for want of policy only with
respect to plaintiff's constitutional claims.  ECF No. 21.  This seems appropriate insofar as the
22  elements of an ADA claim do not explicitly require a custom or policy.  To state a claim under
Title II, a plaintiff must allege:

23            (1) he is an individual with a disability; (2) he is otherwise qualified
24            to participate in or receive the benefit of some public entity's
            services, programs, or activities; (3) he was either excluded from
25            participation in or denied the benefits of the public entity's services,
            programs, or activities, or was otherwise discriminated against by the
26            public entity; and (4) such exclusion, denial of benefits, or
            discrimination was by reason of his disability.

27  *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (citation and brackets
28  omitted).

3.  The motion to dismiss be DENIED in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 28, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE